**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
*rclarkson@clarksonlawfirm.com*
Bahar Sodaify (SBN 289730)
*bsodaify@clarksonlawfirm.com*
Alan Gudino (SBN 326738)
*agudino@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, California 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID E. ROBINSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LANGER JUICE COMPANY, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS & PROFESSIONS CODE SECTION 17200, *et seq.*<br>2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS & PROFESSIONS CODE SECTION 17500, *et seq.*<br>3. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE SECTION 1750, *et seq.*<br>4. BREACH OF WARRANTY<br>5. UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

1.    Plaintiff David E. Robinson ("**Plaintiff**"), individually and on behalf of all other similarly situated purchasers, as more fully described below ("**the Class**" and/or "**Class Members**"), by and through his attorneys, brings this class action against Defendant Langer Juice Company, Inc. ("**Defendant**") and alleges the following based upon information and belief, unless otherwise expressly stated as based upon personal knowledge.

## I.    INTRODUCTION

2.    **Synopsis**. Defendant labels and advertises its Langers 100% Juice products as "100% Juice" or "100% Pure Juice." However, these representations are false and deceptive because the products contain numerous additives, such as ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor. Reasonable consumers, including Plaintiff, are misled into believing they are purchasing beverages made exclusively from juice, when they are not. Through these false and misleading labels, Defendant has engaged in a deceptive marketing campaign affecting consumers in California and nationwide.

3.    **Challenged Representations.** In an effort to increase profits and to obtain an unfair advantage over its lawfully acting competitors, Defendant falsely and misleadingly labels, manufactures, markets, and sells all flavors, sizes, and varieties of its Langers 100% Juice Products, sold online and in stores throughout California and the United States. Specifically, Defendant deceptively labels and advertises the Products as "100% Juice," and "100% Pure Juice," when the Products contain additives and added ingredients not naturally found in juice. True and accurate representations of the Products' deceptive labeling and advertising claims, (hereinafter, the "**Challenged Representations**") are depicted below.

//
//
//
//
//
//
//

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




CLASS ACTION COMPLAINT




CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




CLASS ACTION COMPLAINT




CLASS ACTION COMPLAINT




CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



4.    **The Deception of the Challenged Representations.** The Challenged Representations mislead reasonable consumers into believing that the Products consist solely of "100% Juice" or "100% Pure Juice," with no added ingredients, additives, or preservatives not naturally present in fruit juice. In reality, the Products include ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor—substances that are not naturally found in juice and function as additives or preservatives. As a result, consumers are routinely deceived into purchasing products that are not, in fact, 100% juice. Consumers are willing to pay a premium for products labeled as 100% juice due to the perceived health, quality, and nutritional benefits of pure juice. Defendant exploits this consumer preference to its advantage,

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

securing an unfair competitive edge over law-abiding competitors while deceiving the public. Accordingly, the Challenged Representations are false, misleading, and unlawful.

5. **Products**. The Products at issue are all flavors and varieties of Langers 100% Juice products, including, but not necessarily limited to, Langers 100% Pineapple Juice, Langers 100% Apple Berry Juice, Langers 100% Apple Peach Mango Juice, Langers 100% Apple Grape Juice, Langers 100% Apple Orange Pineapple Juice, Langers 100% White Grape Juice, Langers 100% Apple Cranberry Juice, Langers 100% Red Grape Juice, Langers 100% Concord Grape Juice, Langers 100% Grape Juice, Langer Farms 100% Pineapple Coconut Juice, and Langer Farms 100% Organic Watermelon Strawberry Juice, manufactured or sold by Defendant to consumers in the United States and the State of California, which are labeled and advertised with the Challenged Representations.

6. **Primary Dual Objectives.** Plaintiff brings this action individually and on behalf of those similarly situated to represent a Nationwide Class and a California Subclass of consumers who purchased the Products for dual primary objectives. Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class, a monetary recovery of the premium consumers paid for the Challenged Representations and Defendant's ill-gotten gains, as consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages). Plaintiff further seeks to permanently enjoin Defendant's unlawful advertising practices for the benefit of consumers, including Plaintiff and the Class.

## II.   JURISDICTION

7. This Court has original jurisdiction over the action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class consists of 100 or more members; the amount in controversy exceeds $5,000,000, exclusive of costs and interest; and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## III.   VENUE

8. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this District. Specifically, Plaintiff David E.

Robinson, as detailed below, purchased the unlawful Products in this District, and Defendant has marketed, advertised, and sold the Products within this District.

## IV.   PARTIES

### A.   Plaintiff

9.   **Plaintiff David E. Robinson.** The following is alleged based upon Plaintiff's personal knowledge:

a.   **Residence.** Plaintiff is a resident of Alameda County, California.

b.   **Purchase Details.** Plaintiff periodically purchased the Products  beginning in or around May 2021, at a Safeway store and a Walmart store in Alameda County, California, for approximately $3.00 to $4.00 for each Product. Plaintiff purchased several of the Products, including, Langers 100% Apple Grape Juice, Langers 100% Apple Orange Pineapple Juice, Langers 100% Apple Peach Mango Juice, 100% Apple Berry Cherry Juice, 100% Apple Cranberry Juice, Langers 100% Pineapple Juice, Langer Farms 100% Pineapple Coconut Juice, Langers 100% Red Grape Juice, Langers 100% White Grape Juice, Langers 100% Grape Juice, Langers 100% Concord Grape Juice, Langers 100% Watermelon Strawberry Juice (collectively, the "Purchased Products").

c.   **Reliance on the Challenged Representations.** In making his purchases, Plaintiff relied upon Defendant's labeling, marketing, and advertising claims, including the "100% Juice" and "100% Pure Juice" front label claims. The representations led him to believe that the Purchased Products were exclusively comprised of "100% Juice" and "100% Pure Juice," and thus did not contain any additives not naturally found in fruit juice.

d.   **No Actual Knowledge of Falsity.** At the time of the purchases, Plaintiff was unaware that the aforementioned Challenged Representations were false—i.e., that the Purchased Products contained additives, such as ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor.

e.  **No Notice of Contradictions.** Plaintiff did not observe any disclaimer, qualifier, or other explanatory statement or information on the Product's front-faced labels or packaging that disclosed or suggested that the Purchased Products contained additional ingredients, additives and preservatives that are not naturally found in fruit juice, including ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor.

f.  **Causation/Damages.** But for the Challenged Representations, Plaintiff would not have purchased the Purchased Products or would not have paid as much for it.

g.  **Lack of Personal Knowledge/Expertise to Determine Truth.** Plaintiff does not possess any specialized knowledge, skill, experience, or education in manufacturing process of various beverages or formulations of Defendant's Products, including specific additives added to the Products. As a result, he is unable to determine whether the Products conform to their Challenged Representations.

h.  **Desire to Repurchase.** Plaintiff regularly visits stores where Defendant's Products are sold and intends to purchase the Products again in the future if he can be sure that the Products are compliant with the state consumer protection laws and deliver 100% juice. But absent injunctive relief, Plaintiff cannot now or in the future rely on the Products' labels because he cannot know whether they remain deceptive, and he may reasonably, but incorrectly, assume the Products were improved or otherwise changed to comport with their front labels. Plaintiff is an average consumer who is not sophisticated in his knowledge of ingredients in juice beverages. A permanent injunction prohibiting use of a materially false and misleading label would enable Plaintiff to rely confidently on the labels in making his future purchase decisions. Absent injunctive relief, Plaintiff and other reasonable consumers will be unable to assess the truthfulness of the Products' labels.

10.  **Plaintiff's Future Harm.** Plaintiff would like to purchase the Products again in the future to obtain the benefits of the Challenged Representations—despite the fact that the Products were once marred by false advertising or warranties—Plaintiff would likely and reasonably, but

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

incorrectly, assume the Products conform to their Challenged Representations. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant has fixed the Products such that Plaintiff may buy them again, believing they are no longer misleadingly advertised and warranted, and instead believing that they comply with the Challenged Representations. In this regard, Plaintiff is currently, and in the future, deprived of the ability to rely on the Challenged Representations to purchase the Products.

### B.    Defendant

11.     **Defendant Langer Juice Company, Inc. ("Defendant")** is a corporation headquartered in California. Langer Juice Company, Inc. is located at 16195 Stephens Street, City of Industry, California 91745. Defendant was doing business in the State of California at all relevant times. Directly and through its agents, Defendant has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner, manufacturer, and/or distributor of the Products. Defendant and its agents promoted, marketed, and sold the Products at issue throughout the United States, including the State of California. The unfair, unlawful, deceptive, and misleading Challenged Representations on the Products were prepared, authorized, ratified, and/or approved by Defendant and its agents to deceive and mislead consumers in the State of California into purchasing the Products. Additionally, Defendant knew of the falsity of the Challenged Representations, but chose to include them on the Products' labels at the time Plaintiff and all Class Members purchased the Products. Further, Defendant had the right and authority, at all relevant times, to correct the falsity of the Challenged Representations, including the time leading up to and through the incident giving rise to the claims asserted herein (including, Plaintiff' purchases described above, in addition to all Class Members' purchases).

## V.    FACTUAL ALLEGATIONS

### A.    "100% Juice" Claims Are Material to Reasonable Consumers

12.     Consumers are willing to pay a premium for products labeled as containing 100% juice due to the perceived higher quality, health benefits, and nutritional value associated with pure juice. A systematic review of consumer willingness to pay for healthier foods concluded that 88.5% of the reviewed experiments demonstrated that consumers preferred healthier food to conventional

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

food and were willing to pay a price premium up to 91% higher for healthier products.[1] This, coupled with the fact that global sales of healthy food products reached around $825 billion in 2022, means consumers are eager and willing to pay more for less processed products with fewer additives.[2] Defendant's attempt to leverage consumers' desire for healthy products is misleading and deceptive. Consumers purchase the Products under the mistaken belief that they are comprised of "100% Juice," and therefore do not contain additives.

13.     The term "juice" is commonly defined as the natural liquid extracted from fruits or vegetables—specifically, "the natural fluid, fluid content, or liquid part that can be extracted from a plant or one of its parts, especially of a fruit," [3] or simply "the liquid that comes from fruit or vegetables." [4] A product labeled as "100% Juice" is therefore understood by consumers and defined by regulatory standards to consist solely of these natural liquids, with no added water, ingredients, or substances. This understanding aligns with the U.S. Food and Drug Administration's (FDA) definition of "100% juice" for food labeling purposes, which limits the term to "juices directly expressed from a fruit or vegetable," excluding any concentrated or reconstituted ingredients.[5] Defendant's use of the terms "100% Juice" and "100% Pure Juice" on the Product labels is therefore false and misleading, as the Products contain additives that are not naturally expressed from fruits or vegetables and thus do not meet the definition of "100% juice" under either common usage or federal law.

**B.     The Products Contain Ingredients That Makes the Products Not "100% Juice"**

14.     The Products contain ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor, which are food additives not directly expressed or extracted from fruit.

//

---

[1] Moosa Alsubhi et al, *Consumer Willingness to Pay for Healthier Food Products: A Systematic Review*, 24 OBESITY REV. 1, 5 (2022), doi: 10.1111/obr.13525.
[2] *Health and Wellness Foods Market Outlook (2022 to 2032)*, Fact.MR, https://www.factmr.com/report/health-and-wellness-foods-market (last visited May 8, 2025).
[3] *[J]uice*, Dictionary.com, https://www.dictionary.com/browse/juice (last visited May 8, 2025).
[4] *[J]uice*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/juice (last visited May 8, 2025).
[5] 21 C.F.R. § 101.30(i).

15.    **Ascorbic Acid**. The FDA classifies ascorbic acid as an artificial preservative, which is a type of food additive.[6] Moreover, ascorbic acid is a chemical preservative and is synthetic.[7]

16.    **Pectin**. Pectin is a natural polymer that is often used in the dairy industry as a stabilizer.[8] Pectin is also often used as a gelling agent and dietary supplement.[9]

17.    **Xanthan Gum.** According to the European Union, xanthan gum is authorized as a food additive.[10] Xanthan gum is a high molecular weight polysaccharide produced by a pure-culture fermentation, hence not naturally found in juice.[11] 21 C.F.R. § 172.695 recognizes xanthan gum as a food additive used as a stabilizer, thickener, suspending agent, bodying agent, or foam enhancer.

18.    **Citric Acid.** The FDA classifies citric acid as a preservative.[12] Scientific literature and research also recognize citric acid as a preservative due to its chemical structure and functional characteristics. Its chelating ability and acidic pH enable it to stabilize food products by inhibiting the activity of naturally occurring enzymes that contribute to spoilage, such as enzymatic browning, and by enhancing the effectiveness of antioxidants. [13] These properties help extend shelf life and maintain flavor and appearance in processed foods. Citric acid is also sometimes used as a flavoring agent, but its preservative function remains operative regardless of any secondary role.[14]

//

//

---

[6] 21 C.F.R. § 182.3013; 21 C.F.R 170.3(e)(1); 21 U.S.C. § 321(s).
[7] *Ascorbic Acid Journey: From Production to Applications*, DolChem, https://dolchem.com/blog/ascorbic-acid-journey-from-production-to-applications/ (last visited May 8, 2025).
[8] *PECTIN | Properties and Determination,* ScienceDirect, https://www.sciencedirect.com/topics/neuroscience/pectin (last visited May 8, 2025).
[9] F. Blanco-Pérez et al., *The Dietary Fiber Pectin: Health Benefits and Potential for the Treatment of Allergies by Modulation of Gut Microbiota*, SPRINGER NATURE Link (Sep. 10, 2021), https://doi.org/10.1007/s11882-021-01020-z.
[10] EFSA Panel on Food Additives and Nutrient Sources added to Food (ANS) et al., *Re-evaluation of Xanthan Gum (E 415) as a Food Additive*, EUROPEAN FOOD SAFETY AUTHORITY (Jul. 14, 2017), https://doi.org/10.2903/j.efsa.2017.4909.
[11] *Id*.
[12] *[F]ood Ingredients & Colors*, International Food Information Council and FDA, https://www.fda.gov/files/food/published/Food-Ingredients-and-Colors-%28PDF%29.pdf (last visited May 8, 2025).
[13] Diane M. Barrett et al., *Direct Food Additives in Fruit Processing*, in PROCESSING FRUITS: SCIENCE AND TECHNOLOGY (2nd ed., 2005).
[14] John M. deMan, *Additives and Contaminants*, in PRINCIPLES OF FOOD CHEMISTRY 429, 438 (3d ed. 1999).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

19.  **Acacia Gum**. Acacia gum is used as a food additive.[15] Acacia gum is a soluble secretion from the trunks and branches of Acacia senegal.[16] 21 C.F.R. § 184.1330 states that, in beverages, acacia gum is used as an emulsifier, a flavoring agent, adjuvant, a formulation aid, a stabilizer and thickener.[17]

20.  **Natural Flavors.** The FDA defines "natural flavor" as an "essential oil, oleoresin, essence or extractive, protein hydrolysate, distillate, or any product of roasting, heating or enzymolysis, which contains the flavoring constituents derived from spice, fruit, or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, seafood, poultry, eggs, dairy products, or fermentation products thereof, whose significant function in food is flavoring rather than nutritional."[18] Many of the ingredients compatible with the FDA's definition of "natural flavors" are artificial or highly processed, despite being derived from natural ingredients. Natural flavors are additives that are not expected in the Products labeled as "100% Juice" or "100% Pure Juice."

21.  **Malic Acid.** Malic acid is used as a food preservative and acidity regulator.[19] Malic acid is a food processing aid and is often used in drinks and many other foods.[20] Malic acid is considered a food additive, and is listed on the FDA Food Additive Status List.[21] Additionally, malic acid is used as a flavor enhancer, flavoring agent, and adjuvant according to 21 C.F.R § 184.1069.

22.  **Organic Flavor**. Organic flavor is defined by the USDA as being comprised of at least 95% organically produced ingredients, including complex or compounded flavors (commonly referred to as an "organic natural flavor") that include organic concentrates, organic solvents,

---

[15] EFSA Panel, *supra* note 13.

[16] Muhamad H. Rawl et al., *Manipulation of Gut Microbiota Using Acacia Gum Polysaccharide*, 6 ACS OMEGA 17782, 17782 (2021), https://doi.org/10.1021/acsomega.1c00302.

[17] 21 C.F.R. § 184.1330

[18] 21 C.F.R. § 101.22

[19] EFSA Panel on Additives and Products or Substances used in Animal Feed, *Scientific Opinion on the Safety and Efficacy of Malic Acid and a Mixture of Sodium and Calcium Malate When Used as Technological Additives for All Animal Apecies*, EUROPEAN FOOD SAFETY AUTHORITY (Feb. 18, 2024), doi: 10.2903/j.efsa.2014.3563.

[20] *Summary of TAP Reviewer's Analyses*, USDA Agricultural Marketing Service, https://www.ams.usda.gov/sites/default/files/media/L-Malic%20Acid%20TR.pdf (last visited May 8, 2025).

[21] *Substances Added to Food (formerly EAFUS)*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/food/food-additives-petitions/food-additive-status-list#ftnA (last visited May 8, 2025).

organic carriers and organic and/or natural isolates.[22] Despite the "organic" labeling, certain synthetic and processed substances can be included in organic flavoring, including food additives such as ascorbic acid and sodium citrate.[23]

C.    **Reasonable Consumers Were Misled by the Challenged Representations into Buying the Products**

23.    The Challenged Representations prominently displayed on the front labels of Defendant's Products state that they are "100% Juice" and "100% Pure Juice," accompanied by imagery of whole fruits. These claims expressly and unambiguously communicate to reasonable consumers that the Products consist exclusively of juice and contain no added ingredients, additives, or preservatives.

24.    In reality, and contrary to these representations, the Products contain a range of added substances—including ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor—all of which are additives or preservatives not naturally found in juice. These ingredients alter the composition of the Products, rendering them inconsistent with the "100% Juice" or "100% Pure Juice" claims. As a result, consumers are routinely misled into purchasing Products under the false belief that they are comprised solely of juice. Defendant leverages this deception to exploit consumer preferences for minimally processed products perceived as healthier and more natural, thereby gaining an unfair market advantage through false and misleading labeling.

25.    **Products.** Defendant manufactures, markets, promotes, advertises, labels, packages, and sells the Products, each of which contained the Challenged Representations on the Products' front-facing labels and packaging.

26.    **The Challenged Representations.** On the Products' front-facing labels and packaging, Defendant conspicuously displays the "100% Juice" and "100% Pure Juice" claims yet fails to disclose that the Products contain additives, including ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor.

---

[22] *Labeling Organic Products*, USDA Agricultural Marketing Service, https://www.ams.usda.gov/rules-regulations/organic/labeling (last visited May 8, 2025).
[23] 7 C.F.R Part 205 Subpart G

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

27. **Reasonable Consumer's Perception.** The Challenged Representations lead reasonable consumers, like Plaintiff, into believing that the Products are exclusively comprised of "100% Juice" and "100% Pure Juice," and thus do not contain any additives or preservatives not naturally found in fruit juice.

28. **Deception.** Consumers are consistently misled into purchasing the Products for their advertised ingredients and characteristics when, in fact, no such nutritional benefits are received given the presence and high concentration of additives.

29. **Materiality**. The Challenged Representations were and are material to reasonable consumers, including Plaintiff, in making the decision to purchase the Products, as set forth herein. Plaintiff would not have purchased the Products had he known the Challenged Representations were misleading.

30. **Reliance**. Reasonable consumers, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products, as set forth herein.

31. **Falsity**. The Challenged Representations are false and deceptive because the Products, contrary to their labeling, are not comprised of "100% Juice."

32. **Consumers Lack Knowledge of Deception/Fraudulence.** Consumers, including Plaintiff, who purchased the Products, did not know, and had no reason to know, at the time of purchase, that the Products' Challenged Representations were deceptive and fraudulent. The Products' labeling and packaging misled consumers to believe that the Products were exclusively comprised of "100% Juice" and "100% Pure Juice," and thus did not contain any additives or preservatives not naturally found in fruit juice. The Products did not contain a clear, unambiguous, and conspicuously displayed statement informing reasonable consumers that the Products are not 100% juice but instead  include ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor. Even if Defendant had included inconspicuous fine print or other statements and disclaimers on other portions of the Products' packaging, studies show that only 7.7% to 11.6% of people look at a consumer product's side or back labels before making a

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

purchase and none would be otherwise sufficient to overcome the prominent 100% juice promise.[24] Therefore, qualifying statements or contradictory disclaimers—e.g., an ingredient statement—are not sufficiently conspicuous to presume that a reasonable consumer would have noticed or understood them to qualify or contradict the prominently placed front-panel representations.

33. **Defendant's Knowledge.** Defendant knew, or should have known, that the Challenged Representations were misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Products

a. **Knowledge of Reasonable Consumers' Perception.** Defendant knew or should have known that the Challenged Representations would lead reasonable consumers into believing that the Products are exclusively comprised of "100% Juice" and "100% Pure Juice," and do not contain any additives not naturally found in fruit juice. Not only has Defendant utilized a long-standing brand strategy to label the Products with the Challenged Representations, but Defendant also has an obligation under

---

[24] Klaus G. Grunert et. al, *Nutrition Knowledge, and Use and Understanding of Nutrition Information on Food Labels Among Consumers in the UK*, 55 APPETITE 177, 179–181 (May 2010), https://pubmed.ncbi.nlm.nih.gov/20546813/ (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared). *See also* Klaus G. Grunert et. al, *Use and Understanding of Nutrition Information on Food Labels in Six European Countries*, 18 J. PUB. HEALTH 261, 261, 263, 266 (Jan. 2010), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (consumer purchasing behavior study using in-store observation and interview data collection methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought. *See also* Yael Benn et al., *What Information do Consumers Consider, and How Do They Look for It, When Shopping for Groceries Online?*, 89 APPETITE 265, 265, 270 (June 2015), https://doi.org/10.1016/j.appet.2015.01.025 (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83% to 19.07% of respondents fixated far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% looked at ingredients, 2.97% examined allergy information, and 0.09% examined recycling information).

19

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. § 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged Representations, be it in isolation or conjunction with its marketing strategy, would mislead reasonable consumers into believing that the Products are exclusively comprised of "100% Juice" and "100% Pure Juice," and do not contain any additives or preservatives not naturally found in fruit juice. Thus, Defendant either knew that the Challenged Representations were misleading before it marketed the Products to the Class, including Plaintiff, or Defendant would have known that it was deceptive had it complied with its statutory obligations.

b. **Knowledge of Falsity.** Defendant manufactured and marketed the Products with the Challenged Representations, despite the fact that the Products do not conform to these representations. This suggests that Defendant either knew that the Products could not live up to the promises made in their marketing and labeling, or that Defendant would have known about the Products' inability to perform as advertised had they complied with their statutory obligation to evaluate marketing claims from the perspective of a reasonable consumer.

c. **Exclusive Knowledge.** Defendant is in a superior position to Plaintiff and the Class to know about the truthfulness of the Challenged Representations. As the manufacturer of the Products, Defendant is in the best position to know whether the Products are, in fact, 100% juice. Defendant's control of the manufacturing, design, distribution, and safety testing of the Products gives Defendant exclusive knowledge of the complete nature of the Products, which Defendant purposely retains to deceive consumers including by featuring the affirmative Challenged Representation prominently on the front label.

d. **Knowledge of Materiality.** Defendant knew or should have known of the Challenged Representations materiality to consumers. Manufacturers and marketers, like Defendant, know that consumers are willing to pay more for 100% juice products

because of the higher quality, health, and nutritional benefits associated with less processed foods. Here, the Challenged Representations directly represent the Product as "100% Juice" and "100% Pure Juice." Thus, Defendant knew, in designing the Product labels, that the Challenged Representations were material to consumers.

e. **Defendant's Deception, Despite Its Knowledge.** As the manufacturer and marketer of the Products, Defendant had exclusive control over the Challenged Representations on the Products' labels, packaging, and advertisements. Despite Defendant's knowledge of the falsity of the Challenged Representations, and its awareness that consumers reasonably rely on these representations when deciding to purchase the Products, Defendant deliberately chose to market the Products with the misleading Challenged Representations. This decision led consumers to buy or overpay for the Products, believing they possessed attributes that Defendant falsely advertised and warranted. Therefore, Defendant knew or should have known, at all relevant times, that the Challenged Representations would mislead reasonable consumers, such as Plaintiff, into purchasing the Products to obtain the product attributes that Defendant deceptively portrayed.

34.     **Detriment**. Plaintiff and similarly situated consumers would not have purchased the Products, or would not have purchased the Products for as great a price, if they had known that the Challenged Representations were false and, therefore, the Products did not have the attributes claimed, promised, warranted, advertised, and represented. Accordingly, based on Defendant's material misrepresentations, reasonable consumers, including Plaintiff, purchased the Products to their detriment.

## D.     The Products Are Substantially Similar

35.     As described herein, Plaintiff purchased the Purchased Product. The additional Products identified supra (collectively, the "**Unpurchased Products**") are substantially similar to the Purchased Product.

a. **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

b. **Brand.** All Products are sold under the same brand name: Langers and Langer Farms.

c. **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

d. **Purpose and the Challenged Representations.** All Products are juice beverages labeled and marketed with the same Challenged Representation, "100% Juice" or "100% Pure Juice" on the front-facing packaging and labeling. front-facing packaging and labeling.

e. **Packaging.** All Products are otherwise similarly packaged.

f. **Key Attributes.** All Products contain additives, such as ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor. Therefore, none are 100% Juice or 100% Pure Joice as promised.

g. **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for all Products—consumers over-pay for the Products because they believe that the Products are exclusively comprised of "100% Juice" and "100% Pure Juice," and do not contain any additives not naturally found in fruit juice.

E.    **No Adequate Remedy at Law**

36.    **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products with the Challenged Representations across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of Plaintiff—an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes—and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states, breach of warranty may require privity of contract or prelawsuit notice, which are not typically required to establish unjust enrichment/restitution. Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the Products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief.** . Injunctive relief is appropriate on behalf of Plaintiff and members of the Class to ensure Defendant does not misrepresent the Products with the Challenged Representations. Permanent injunctive relief will prevent Defendant from engaging in the unfair, fraudulent, and/or unlawful conduct described and

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures, is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representations are not true and providing accurate information about the Products' true nature. An injunction, requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet been completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Products' sales, and quantities of past/future Products' sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims.** Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f.   **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action, and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves Plaintiff's right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.   CLASS ACTION ALLEGATIONS

37.   **Class definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as members of the Classes defined as follows:

> All residents of the United States who, within the applicable statute of limitations periods, purchased the Products, containing the Challenged Representations on the Products' labels or packaging, for purposes other than resale ("**Nationwide Class**"); and

> All residents of California who, within four years prior to the filing of this action, purchased the Products, containing the Challenged Representations on the Products' labels or packaging, for purposes other than resale ("**California Subclass**").

(the "Nationwide Class" and "California Subclass" are collectively referred to as the "**Class**").

38.   **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

39. **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

40. **Numerosity.** The class is so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class number in the thousands throughout California and the United States.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

41. **Common Questions Predominate.** There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact common to the Class predominate over questions which may affect individual Class members. Common questions of law and fact include, but are not limited to, the following:

a. Whether Defendant engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products;

b. Whether Defendant's conduct of advertising and selling the Products as 100% juice when they are not constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

c. Whether Defendant used a deceptive representation in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

d. Whether Defendant represented that the Products have characteristics or qualities that they do not have in violation of Civil Code section 1750, *et seq.*;

e. Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

f. Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

g.  Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising were and are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.  Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.  Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.  Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.  Whether Plaintiff and the Class paid more money for the Products than they actually received;

l.  How much more money Plaintiff and the Class paid for the Products than they actually received;

m.  Whether Defendant's conduct constitutes breach of warranty;

n.  Whether Plaintiff and the Class are entitled to injunctive relief; and

o.  Whether Defendant was unjustly enriched by its unlawful conduct.

42.  **Typicality.** Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Products. Defendant's unlawful, unfair, and/or fraudulent actions concern the same business practices described herein, irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

43.  **Adequacy**. Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members he seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

44.    **Superior and Substantial Benefit.** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

    b.    Absent a Class, the members of the Class will continue to suffer damages and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

    c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

    d.    When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

    e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

45.    **Ascertainability.** Class Members can easily be identified by an examination and analysis of the business records regularly maintained by Defendant, among other records within Defendant's possession, custody, or control. Additionally, further Class Member data can be obtained through additional third-party retailers who retain customer records and order histories.

46.    **Superiority and Substantial Benefit**. A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

b.  Absent a Class, the members of the Class will continue to suffer damage, and Defendant will be free to engage in unlawful conduct will continue while profiting from and enjoying its ill-gotten gains;

c.  Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.  When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

47.  **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

48.  **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

49.  **Manageability**. Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

//

//

//

//

//

CLASS ACTION COMPLAINT

## VII.   CAUSES OF ACTION

### COUNT ONE

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

### (*On Behalf of the California Subclass*)

50.     **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

51.     **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq.*, on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

52.     **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the "**UCL**") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

53.     **False Advertising Claims.** Defendant, in its advertising and packaging of the Products, made misleading statements regarding the quality and characteristics of the Products—specifically, the Challenged Representations—despite the fact that the Products are not "100% Juice" or "100% Pure Juice" because they contain additives. Such claims appear on the front label and packaging of the Products, which are sold at retail stores and point-of-purchase displays, as well as Defendant's official website, and other retailers' advertisements that have adopted Defendant's advertisements.

54.     **Defendant's Deliberately Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the Products' "100% Juice" and "100% Pure Juice" claims because the Products contain additives, such as ascorbic acid, pectin, xanthan gum, citric acid, acacia gum, natural flavors, malic acid, and organic flavor. Although Defendant knew and knows that the Products are not "100% Juice" or "100% Pure Juice", Defendant intentionally advertised and marketed the Products as 100% juice products.

//

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

55.    **Exclusive Knowledge.** Defendant has exclusive knowledge of the ingredients in the Products included additives. Defendant, as the manufacturer of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the ingredients in the Products. Defendant's control of the manufacturing, design, and distribution of the Products gives Defendant exclusive knowledge of the presence of the additives.

56.    **Misleading Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products are "100% Juice" and "100% Pure Juice," and do not contain any additives not naturally found in fruit juice.

57.    **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon the Challenged Representation— namely, Plaintiff and the California Subclass lost the purchase price for the Products they bought from Defendant.

58.    **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

59.    **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

60.    **Business Practice.** All of the conduct alleged occurred in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

61.     **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from engaging, using, or employing the challenged label practices.  Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

62.     **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages, including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to prevent future harm.

### *"Unfair" Prong*

63.     **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California*, 142 Cal. App. 4th 1394, 1403 (2006).

64.     **Injury.** Defendant's action of mislabeling the Products with the Challenged Representations does not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive Products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Products. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

//

65.     **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012).

66.     **No Utility.** Here, Defendant's conduct of labeling the Products with the Challenged Representations when the Products contain additives has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

67.     **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.*, 504 F. 3d 718, 735 (9th Cir. 2007).

68.     **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's Challenged Representations constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

69.     **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

70.     **Defendant's Wrongful Conduct.** All of the conduct alleged occurs in Defendant's business. Defendant's wrongful conduct is part of a repeated pattern or generalized course of conduct.

71.     **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from engaging, using, or employing the challenged label practices.

72.     **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Products that were exclusively comprised of "100% Juice" and "100% Pure Juice," and did not

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

contain any additives. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Fraudulent" Prong*

73.    **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

74.    **Fraudulent & Challenged Representations.** Defendant used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations are deceptive, and Defendant knew, or should have known, of their deception. The Challenged Representations are likely to mislead consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

75.    **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

76.    **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the Challenged Representations to their detriment in that they purchased the Products.

77.    **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

78.    **Business Practice.** All of the conduct alleged occurs in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

79.    **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from engaging, using, or employing the challenged label practices.

80.    **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that they believed were exclusively comprised of "100% Juice" and "100% Pure Juice," when, in fact, the Products contained additives. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seek damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### *"Unlawful" Prong*

81.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.*, 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

82.    **Violations of CLRA and FAL.** Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

83.    **Fraud.** Additionally, Defendant's use of the Challenged Representations to sell the Products violates California Civil Code sections 1572 (actual fraud), 1573 (constructive fraud), 1709-1710 (fraudulent deceit), and 1711 (deceit upon the public), as set forth above.

84.    **Additional Violations.** Defendant's conduct in making the Challenged Representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's omission of material facts, i.e., the Products contain additives, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

//

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

85.   **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

86.   **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products with the Challenged Representations.

87.   **Business Practice.** All of the conduct alleged occurs in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

88.   **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from engaging, using, or employing the challenged label practices.

89.   **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendant's purposely deceived consumers into believing that the Products are exclusively comprised of "100% Juice" and "100% Pure Juice," and do not contain any additives. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

<u>**COUNT TWO**</u>

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, *et seq*.)**

(***On Behalf of the California Subclass***)

90.   **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

91.   **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

92.   **FAL Standard.**  The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

93. **Challenged Representations Disseminated to the Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, and misleading Challenged Representations to the public through the Products' labeling, packaging, and advertising. The Challenged Representations were deceptive because the Products did not conform to them. The Challenged Representations were material because it is likely to and did mislead reasonable consumers into purchasing the Products.

94. **Knowledge.** In making and disseminating the Challenged Representations alleged herein, Defendant knew or should have known that the Challenged Representations was untrue or misleading, and acted in violation of § 17500.

95. **Exclusive Knowledge.** Defendant has exclusive knowledge of the Products' ingredients include additives. Defendant, as the manufacturer of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the ingredients in the Products. Defendant's control of the manufacturing, design, and distribution of the Products gives Defendant exclusive knowledge of the presence of additives.

96. **Intent to sell.** Defendant's Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

97. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to prevent future harm.

//

//

//

//

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*On Behalf of the California Subclass*)

98.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

99.    **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

100.    **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

101.    **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code § 1761(a).

102.    **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code § 1761(c).

103.    **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code § 1761(d).

104.    **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

105.    **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the misleading, deceptive, and fraudulent Challenged Representations:

a. Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

b. Section 1770(a)(7) by representing that the Products "are of a particular standard, quality, or grade . . . [when] they are of another."

c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell them as advertised."

106. **Knowledge.** Defendant's uniform and Challenged Representations on the Products were likely to deceive, and Defendant knew or should have known that its misrepresentations were misleading.

107. **Exclusive Knowledge.** Defendant has exclusive knowledge that the Products' ingredients contain additives. Defendant, as the manufacturer of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the ingredients of the Products. Defendant's control of the manufacturing, design, and distribution of the Products gives Defendant exclusive knowledge of the presence of the additives.

108. **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

109. **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were misled by the Challenged Representations on the front labels and unaware of the existence of additives, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

110. **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were together a substantial factor. The Challenged Representations were material because a reasonable consumer would consider them important in deciding whether to purchase the Products.

111. **Section 1782(d)—Prelitigation Demand/Notice.** More than thirty days prior to the filing of this complaint, on or about July 22, 2024, Plaintiff's counsel, acting on behalf of all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant Langer Juice Company, Inc. at its headquarters and principal place of business registered with the California Secretary of State (16195 Stephens Street, City of Industry, California 91745) and its registered agent for service of process (CSC - Lawyers Incorporating

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Service, 2710 Gateway Oaks Dr., Ste. 150N Sacramento, CA 95833), which were delivered to those addresses on or about July 29, 2024.

112. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages, including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

113. **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to prevent Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices can continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from employing the unlawful methods, acts, and practices alleged pursuant to section 1780(a)(2), and otherwise require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products with the Challenged Representations.

114. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the falsity of the Challenged Representations and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant. Accordingly, Plaintiff seeks an award of punitive damages against Defendant.

**COUNT FOUR**

**Breach of Warranty**

***(On Behalf of the Nationwide Class and California Subclass)***

115. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

116. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass who purchased the Products within the applicable statute of limitations.

117. **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the Challenged Representations.

118. **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant— to wit, that the Products, among other things, conform to the Challenged Representations.

CLASS ACTION COMPLAINT

119. **Breach of Warranty.** Contrary to Defendant's warranties, the Products do not conform to the Challenged Representations; therefore, Defendant breached its warranties about the Products and their qualities.

120. **Exclusive Knowledge.** Defendant has exclusive knowledge of the Products' ingredients contained additives. Defendant, as the manufacturer of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the Products' ingredients. Defendant's control of the manufacturing, design, and distribution of the Products gives Defendant exclusive knowledge of the presence of the additives.

121. **Prelitigation Demand/Notice.** More than thirty days prior to the filing of this complaint, on or about July 22, 2024, Plaintiff's counsel, acting on behalf of all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant Langer Juice Company, Inc. at its headquarters and principal place of business registered with the California Secretary of State (16195 Stephens Street, City of Industry, California 91745) and its registered agent for service of process (CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Dr., Ste. 150N Sacramento, CA 95833), which were delivered to those addresses on or about July 29, 2024. The Demand Letter notified Defendant of its breach of warranty.

122. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages, including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to future harm.

123. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious

as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers, as Defendant was aware of the falsity of the Challenged Representations and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

124. **Incorporation by Reference.** Plaintiff re-allege and incorporate by reference all allegations contained in this complaint, as though fully set forth herein.

125. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass who purchased the Products within the applicable statute of limitations.

126. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

127. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

128. **Exclusive Knowledge.** Defendant has exclusive knowledge of the Products' ingredients contained additives. Defendant, as the manufacturer of the Products, is in a superior knowledge position to consumers, including Plaintiff, to know about the Products' ingredients.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Defendant's control of the manufacturing, design, and distribution of the Products gives Defendant exclusive knowledge of the presence of additives.

129. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive Challenged Representations.

130. **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to prevent future harm.

## X.    PRAYER FOR RELIEF

131. WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against Defendant as follows:

    a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representatives, and appointing Plaintiff' Counsel as Class Counsel;

    b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein consistent with applicable law and pursuant to only those causes of action so permitted;

    c. **Injunction:** For an order permanently enjoying Defendant's unlawful advertising practices for the benefit of consumers and the public at large.

    d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

    e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

    f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## IX. JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all triable issues.

DATED: May 13, 2025                  **CLARKSON LAW FIRM, P.C.**


/s/ Bahar Sodaify
Ryan J. Clarkson, Esq.
Bahar Sodaify, Esq.
Alan Gudino, Esq.

*Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265